IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TYRONE ELLIS, # 248229, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:08cv897-WHA |
| | ) | (WO) |
| GARY HETZEL, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This cause is before the court on a *pro se* 28 U.S.C. § 2254 petition for habeas corpus

relief filed by state inmate Tyrone Ellis ("Ellis") on November 4, 2008, and amended on

March 1, 2010.[1]  In his petition, as amended, Ellis challenges convictions for murder and

attempted murder entered against him in August 2006 by the Circuit Court of Elmore

County, Alabama.  The trial court sentenced Ellis, as a habitual offender with one prior

felony conviction, to 40 years in prison for the murder conviction and to 25 years in prison

for the attempted murder conviction.

Ellis filed a direct appeal in which he claimed that (1) the trial court erred in denying

his motion for a judgment of acquittal based on the alleged insufficiency of the State's

---

[1]These dates are the dates on which Ellis delivered the petition and amendment to prison officials for mailing.  The law is well settled that a *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).

evidence, and (2) the trial court erroneously allowed the State to elicit testimony pursuant to Ala.R.Evid. 404(b) showing alleged prior bad acts committed by Ellis.  *Exhibit B - Doc. No. 14-6*.[2] On February 23, 2007, the Alabama Court of Criminal Appeals affirmed Ellis' convictions in an unpublished memorandum opinion.  *Exhibit D - Doc. No. 14-8*.  The appellate court's opinion, in relevant part, reads as follows:

I.

Ellis first argues that the trial court erred in denying his motion for a judgment of acquittal because, he claims, the State failed to prove a prima facie case. Although couched in terms of a challenge to the sufficiency of the evidence, Ellis's argument challenges both the sufficiency of the evidence and the weight of the evidence.

The evidence adduced at trial indicated that on February 24, 2005, Antonio Colquitt ("Tony") and Maurice Hollenquest were shot; Tony died as a result of his injuries and Hollenquest survived. Hollenquest testified at trial that Tony and he had just finished watching a television show at Tony's brother's house and left to go to a party. According to Hollenquest, when they walked outside, Ellis approached Tony with a liquor bottle poised as if to strike Tony, at which time Tony punched Ellis, knocking him down.

Hollenquest testified that Tony then helped Ellis to his feet and Tony and Ellis walked a short distance away, shook hands, and then walked back. Hollenquest stated that Ellis went inside the residence at 306 South Pine Street and then came back out with a gun. According to Hollenquest, Ellis began shooting at them and they began running away. Hollenquest testified that he turned and saw Tony fall. Hollenquest stated that he ran behind the residence at 310 South Pine Street, attempting to elude Ellis, but that Ellis came around the back of the house and shot him; according to Hollenquest, he was looking at Ellis when Ellis shot him.[1]

[n.1.  Hollenquest testified that he was permanently paralyzed by the gunshot wound.]

_____

[2]Unless otherwise noted, all references to exhibits are to Respondents' Exhibits.

Kenneth and Kwanterio Whitaker, Ellis's cousins, and Lamarco Thomas testified that they were sitting outside the Whitakers' house at 310 South Pine Street when Ellis came out of a nearby house and began shooting a gun. Kenneth's testimony indicated that he saw Tony and Hollenquest standing in the yard immediately prior to the gunfire; Kwanterio testified that he did not see who was doing the shooting, but that he saw Tony and Hollenquest standing in the yard immediately prior to the gunfire; and Lamarco's testimony indicated that he saw Ellis come out of the residence, jump off the porch, and begin firing in the direction that Hollenquest and Tony were standing.

Barbara Colquitt, Tony's aunt, testified that she was sitting in her house at 306 South Pine Street when Darren Johnson informed her that Tony and Ellis were engaged in a confrontation in the front yard. She stated that a short time later Ellis entered the residence and asked for Johnson to give him a gun; according to Colquitt, Johnson dropped the gun as he was handing it to Ellis, and Ellis picked it up off the floor and went outside. Colquitt testified that as he was heading toward the door, she asked him, "Please don't kill my nephew." (R. 112.) According to Colquitt, she heard gunshots approximately 15-20 seconds after Ellis left her house.

"'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" *Ballenger v. State*, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting *Faircloth v. State*, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985). "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" *Nunn v. State*, 697 So. 2d 497, 498 (Ala. Crim. App. 1997), quoting *O'Neal v. State*, 602 So. 2d 462, 464 (Ala. Crim. App. 1992). "'When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" *Farrior v. State*, 728 So. 2d 691, 696 (Ala. Crim. App. 1998), quoting *Ward v. State*, 557 So. 2d 848, 850 (Ala. Crim. App. 1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." *Ex parte Bankston*, 358 So. 2d 1040, 1042 (Ala. 1978).

Further, "'[i]ntent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.'" *Seaton v. State*, 645 So. 2d 341, 343 (Ala. Crim. App. 1994), quoting *McCord v. State*, 501 So. 2d 520, 528-29 (Ala. Crim. App. 1986). Intent "'"may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances."'" *Farrior v. State*, 728 So. 2d 691, 695 (Ala. Crim. App. 1998), quoting *Jones v. State*, 591 So. 2d 569, 574 (Ala. Crim. App. 1991), quoting in turn *Johnson v. State*, 390 So. 2d 1160, 1167 (Ala. Crim. App.1980). "'The intent of a defendant at the time of the offense is a jury question.'" *C.G. v. State*, 841 So. 2d 281, 291 (Ala. Crim. App. 2001), aff'd, 841 So. 2d 292 (Ala. 2002), quoting *Downing v. State*, 620 So. 2d 983, 985 (Ala. Crim. App. 1993).

Further, we note that any "inconsistencies and contradictions in the State's evidence, as well as [any] conflict between the State's evidence and that offered by the appellant, [goes] to the weight of the evidence and [creates a question] of fact to be resolved by the jury." *Rowell v. State*, 647 So. 2d 67, 69-70 (Ala. Crim. App. 1994). "'"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine."'" *Johnson v. State*, 555 So. 2d 818, 820 (Ala. Crim. App. 1989), quoting *Harris v. State*, 513 So. 2d 79, 81 (Ala. Crim. App. 1987), quoting in turn *Byrd v. State*, 24 Ala. App. 451, 451, 136 So. 431, 431 (1931). More importantly, "'[t]he question of the victim['s] credibility [is] one for the jury and not for this Court.'" *Rowell*, 647 So. 2d at 69, quoting *Coats v. State*, 615 So. 2d 1260, 1260 (Ala. Crim. App. 1992). "We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial." *Johnson*, 555 So. 2d at 820. "'When the jury has passed on the credibility of evidence tending to establish the defendant's guilt, this Court cannot disturb its finding.'" *Rowell*, 647 So. 2d at 69, quoting *Collins v. State*, 412 So. 2d 845, 846 (Ala. Crim. App. 1982). Furthermore, "'[t]his Court must view the evidence in the light most favorable to the State, and "draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact."'" *D.L. v. State*, 625 So. 2d 1201, 1204 (Ala. Crim. App. 1993), quoting *Woodberry v. State*, 497 So. 2d 587, 590 (Ala. Crim. App. 1986). "Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case." *Jones v. State*, 719 So. 2d 249, 255 (Ala. Crim. App. 1996), aff'd, 719 So. 2d 256 (Ala. 1998).

The State's evidence was legally sufficient to warrant submission of the case to the jury. The attempted-murder victim testified that Ellis was the man

who chased and shot him with a gun; his testimony alone, if believed by the jury, was sufficient to sustain Ellis's attempted-murder conviction. Further, the State presented a number of witnesses who testified that Ellis was engaged in an altercation with the murder victim shortly before he was shot, and that Ellis was the gunman. The jury obviously resolved any credibility choices or conflicts in the evidence adversely to Ellis, and, the State having presented a prima facie case, this Court will not invade the province of the jury and reweigh the evidence.

II.

Ellis also argues that the trial court erroneously allowed the State to elicit testimony pursuant to Rule 404(b), Ala.R.Evid., showing alleged prior bad acts committed by Ellis. Specifically, Ellis challenges the propriety of Charlotte Bysell's testimony that Ellis was involved in an altercation with Bysell's fiancé a month before the shootings.[2]

> [n.2. Bysell's fiancé, John Colquitt, was deceased at the time of Ellis's trial. The testimony further indicated that John Colquitt was the deceased victim's brother.]

During the State's redirect examination of Bysell, the following exchange occurred:

"[Prosecutor]:   You testified that the defendant in your perception wasn't someone that sought conflict?

"[Bysell]:  Not to my knowledge.

"[Prosecutor]:  Has he and your husband [John Colquitt] ever gotten into an argument?

"[Bysell]:  Yes, ma'am.

"[Prosecutor]:  Did your husband go over to (sic) house?

"[Bysell]:  No, not at the start of the conflict. At one time him and John was buddies, and John stepped over his boundaries by trying to help [Ellis]'s wife when they was into it, then they fell out.

5

"[Prosecutor]:  Is it fair to say a lot of this happened because –

"[Bysell]:  Of John trying to defend Monique.

"[Prosecutor]:  [Ellis']s wife?

"[Bysell]:  Yes.

"[Prosecutor]:  Did she come to John for help?

"[Bysell]:  Yes, she came and sat on our front porch, asking us to help because he was crazy.  I told her to leave, and John wouldn't let her leave, and John --

    "[Defense counsel]:  Wait, hearsay, object.

"BY THE COURT:  It's too late.  I can't rule on an objection that comes after.

    "[Defense counsel]:  Yes, sir.  I couldn't get it in quick enough.

"[Prosecutor]:  Ms. [Bysell], did [Ellis] ask your husband to step out into the street?

"[Bysell]:  Later on, yes.

"[Prosecutor]:  What did he do to your husband?

"[Bysell]:  He hit him, knocked him to the ground.

"[Prosecutor]:  Would you view that as a conflict?

"[Bysell]:  Yes."

(R. 130-31.)

    As the trial court correctly noted and the State argues on appeal, Ellis's objection to the testimony regarding the altercation was not raised until after the question had been asked and answered.   "'An objection to a question, made after an answer is given, is not timely and will not preserve the issue for

review.'" *Roper v. State*, 695 So. 2d 244, 246 (Ala. Crim. App. 1996), cert. denied, 695 So. 2d 249 (Ala. 1997), quoting *Scott v. State*, 624 So. 2d 230, 234 (Ala. Crim. App. 1993).  See also *Ex parte Crymes*, 630 So. 2d 125, 127 (Ala. 1993) (holding that "[a] proper objection must be made after the question calling for objectionable testimony is asked and before the witness answers.").  Thus, this issue was not preserved for appellate review.

Further, the testimony was elicited during the State's redirect examination of the witness.  We note that prior to the above-quoted exchange, the following exchange occurred on cross-examination:

> "[Defense counsel]:  Tyrone Ellis, how long has he been your neighbor?
>
> "[Bysell]:  Probably a year.  Not sure.
>
> "[Defense counsel]:  About a year.  In that year's, time, did you know him to be a pretty good neighbor, was he a hellraiser, all the time causing trouble, or a pretty good neighbor?
>
> "[Bysell]:  Kind of both.  He had bad days and he had good days.  Me and him personally didn't have any problems.
>
> "[Defense counsel]:  Did he go out and look for conflict, or was he reserved and kind –
>
> "[Bysell]:  Not to my knowledge, I cannot say that because I don't know."

(R. 127.)

It is well settled that

> "A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in the trial court that were invited by him or were a natural consequence of his own action.  *Leverett v. State*, 462 So. 2d 972 (Ala. Cr. App. 1984), cert. denied, 462 So. 2d 972 (Ala. 1985).  A defendant cannot invite error by his conduct and later profit by the error.  *Timmons v. State*, 487 So. 2d 975 (Ala. Cr. App.), cert. denied, 487 So. 2d 975 (Ala. 1986)."

*Fountain v. State*, 586 So. 2d 277, 282 (Ala. Crim. App. 1991).

Here, by questioning Bysell about whether Ellis was a good neighbor or a hellraiser who sought out conflicts, Ellis opened the door for questioning by the State on redirect examination.  Therefore, even if this issue were properly before this Court, Ellis would not have been entitled to any relief on appeal.

Based on the foregoing, the judgment of the trial court is affirmed.

*Exhibit D - Doc. No. 14-8* at 2-12 (footnotes from appellate court's opinion contained internally within quoted material).  Ellis did not request a rehearing in the Alabama Court of Criminal Appeals, nor did he petition the Alabama Supreme Court for a writ of certiorari. On March 14, 2007, the Alabama Court of Criminal Appeals issued a certificate of judgment in the case.  *Exhibit I - Doc. No. 26-1.*

Sometime between March and May 2007, Ellis filed a *pro se* state post-conviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure with the Circuit Court of Elmore County (the trial court), in which he alleged, generally, that he was denied effective assistance of counsel at trial and on appeal.[3]  *Exhibit E - Doc. No. 14-15* at 6-35. More specifically, Ellis alleged that his trial counsel rendered ineffective assistance by (1) failing to object at sentencing to the State's failure to present the trial court with a certified copy of his prior conviction or to give him prior notice of its intent to seek enhancement under Alabama's Habitual Felony Offender Act; (2) failing to file a motion to suppress or to object at trial based on the deficiency of the affidavit/arrest warrant in his case; (3) failing

---

[3]Ellis did not state on the Rule 32 form what date the petition was being mailed; his verification of the petition was dated March 23, 2007.  The circuit clerk stamped the petition as received on May 7, 2007.

to object to the murder indictment on the ground that it was fatally defective for not alleging the type of weapon used and for not containing language "verbatim" to that of the murder statute; and (4) failing to object to the enhancement of his sentence under the Habitual Felony Offender Act on the ground that his prior felony conviction was not alleged in the indictment or found by the jury beyond a reasonable doubt.  *Id*.  In addition, Ellis alleged that his appellate counsel rendered ineffective assistance by failing to properly preserve and argue on direct appeal the claim of ineffective assistance of trial counsel.  *Id*.  After receiving a response from the State, the trial court entered an order summarily denying Ellis's Rule 32 petition on May 15, 2007.  *Id*. at 73-84.

Ellis, proceeding *pro se*, appealed the denial of his Rule 32 petition to the Alabama Court of Criminal Appeals, where he reasserted the claims presented in his Rule 32 petition. *Exhibit F - Doc. No. 14-10*.  On August 22, 2008, the Alabama Court of Criminal Appeals entered a memorandum affirming the trial court's denial of Ellis's Rule 32 petition.  *Exhibit H - Doc. No. 14-12*.  The appellate court's opinion, in relevant part, reads as follows:

> In his petition, Ellis alleged that he was denied the effective assistance of counsel at trial and on appeal. ...
>
> ...  [I]n *Strickland v. Washington*, 466 U.S. 668,687 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel.  A defendant has the burden of showing (1) that his counsel's performance was deficient and (2) that that deficient performance actually prejudiced the defense.  To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide

9

range of reasonable professional assistance." 466 U.S. at 689. To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner must not only "identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," *Strickland v. Washington*, 466 U.S. 668, 690 (1984), but must also plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.

## I.

Ellis contends that his trial counsel was ineffective for not objecting to the use of his prior aggravated arson conviction from Illinois for use in sentence enhancement on the ground that the State failed to properly prove the prior conviction.[2] He also argues that "[a]n accused who has not been convicted yet much less notified that upon conviction he will be treated as a habitual offender cannot by conceding a prior conviction on cross-examination during the trial of his guilt intentionally relinquish his right to insist the State prove his former conviction at sentencing." (C. 13.)

> [n.2 In his petition, Ellis also cited law dealing with the requirement that the State provide notice of its intent to invoke the Habitual Felony Offender Act and of the prior convictions upon which it intends to rely. However, Ellis made no actual argument in his petition that he was not given notice of the State's intent to invoke the Habitual Felony Offender Act. Therefore, to the extent Ellis intended this to be a separate claim in his petition, it clearly fails to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b).]

In his petition, Ellis provided extensive citations to law regarding the requirements for proving an out-of-state conviction, but failed to allege any facts. He conceded in his petition that he had admitted his prior conviction during his testimony at trial, but failed to allege whether the State choose to stand on the admission or whether the State presented any documentation at sentencing regarding the prior conviction and, if so, why he believed the State's documentation was insufficient. Therefore, Ellis clearly failed to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b).

In addition, his claim is meritless. It is well settled that "[t]he voluntary admission on the record of the prior felony conviction dispense[s] with the

requirement of notice," *Glass v. State*, 627 So. 2d 1098, 1099 (Ala. Crim. App. 1993) (citations omitted), and that when a defendant admits he has prior felony convictions, those convictions are deemed proven for purposes of the HFOA, see *Brown v. State*, 784 So. 2d 371, 372 (Ala. Crim. App. 2000). Because Ellis admitted to his prior conviction during his trial, both the State's notice requirement and its burden to prove the prior conviction were eliminated. Therefore, any objection by trial counsel on these grounds would have been baseless. "[C]ounsel could not be ineffective for failing to raise a baseless objection." *Bearden v. State*, 825 So. 2d 868, 872 (Ala. Crim. App. 2001). Summary denial of this allegation of ineffective assistance of counsel was, thus, proper.

## II.

Ellis contends that his trial counsel was ineffective for not moving to dismiss the indictment and to suppress evidence on the ground that the affidavit/complaint submitted in support of the arrest warrant for attempted murder was defective. Specifically, he argues that the affidavit/complaint consisted solely of conclusory allegations of the affiant without any specific facts supporting probable cause.

Ellis's claim that his counsel should have moved to dismiss the indictment is meritless. The affidavit/complaint, which Ellis attached to his Rule 32 petition, was sworn before a magistrate on February 25, 2005. The record from Ellis's direct appeal reveals that the indictment charging Ellis with both murder and attempted murder was returned in October 2005. As the circuit court correctly noted in its order, the return of a valid indictment cured any error or defect in Ellis's arrest and did not warrant dismissal of the charge. """As a general rule, the mere fact that the arrest of an accused person is unlawful is of itself no bar to a prosecution on a subsequent indictment or information...."'" *Taylor v. State*, 589 So. 2d 804, 805 (Ala. Crim. App. 1991), quoting *Coral v. State*, 551 So. 2d 1181, 1182 (Ala. Crim. App. 1989), quoting in turn, 41 Am. Jur. 2d. *Indictments and Informations* § 18 (1968). "'An illegal arrest "does not void a subsequent conviction,"'... does not bar prosecution on an indictment returned after the arrest, ... and does not entitle the accused to a dismissal of the charges against him....'" *Holland v. State*, 615 So. 2d 1313, 1317, quoting *Atwell v. State*, 594 So. 2d 202, 208 (Ala. Crim. App. 1991). Therefore, this allegation of ineffective assistance of counsel was properly denied by the circuit court.

Ellis's claim that his counsel should have moved to suppress evidence

was not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b) because Ellis did not even allege what evidence he believed should have been, or could have been, suppressed on the ground that the affidavit/complaint was invalid. Therefore, this allegation of ineffective assistance of counsel was also properly denied by the circuit court.

III.

Ellis contends that his trial counsel was ineffective for not objecting to the indictment charging him with murder on three grounds: (1) that the indictment did not allege what specific weapon he used in the murder; (2) that the indictment did not track the language of the statute because it alleged that he "intentionally" shot the victim, not that he shot the victim "with intent" (C. 17); and (3) that the indictment was improperly modified. Ellis's first two claims regarding the indictment, as set out above, are meritless. The indictment, which Ellis attached to his petition, alleged, in pertinent part:

> "The Grand Jury of Elmore County charge that, before the finding of the indictment, Tyrone Ellis, whose true name is to the Grand Jury unknown, otherwise than as stated, did intentionally cause the death of another person, ANTOYO CARL COLQUITT JR., by shooting him in the head, in violation of Section 13A-6-2, Code of Alabama, 1975."

(C. 35.) Rule 13.2(a), Ala.R.Crim.P., provides that an indictment "shall be a plain, concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment." In Alabama, "'[a]n indictment is sufficient if it substantially follows the language of the statute violated, provided the statute prescribes with definitiveness the elements of the offense.'" *Travis v. State*, 776 So. 2d 819, 836 (Ala. Crim. App. 1997), aff'd, 776 So. 2d 874 (Ala. 2000), quoting *Breckenridge v. State*, 628 So. 2d 1012, 1015-16 (Ala. Crim. App. 1993). The indictment here substantially tracked the language of the statute and properly charged the offense of murder. Contrary to Ellis's contention, the indictment did not have to allege what specific weapon was used in the murder, and did not have to use the phrase "with intent"; the word "intentionally" is synonymous with the phrase "with intent." Any objection to the indictment on these grounds would have been baseless. As noted above, counsel is not ineffective for not raising a baseless objection. See, e.g., *Bearden v. State*, 825 So. 2d 868, 872 (Ala. Crim. App. 2001). Therefore,

summary denial of these allegations of ineffective assistance of counsel was proper.

Ellis's third claim regarding the indictment was not sufficiently pleaded to satisfy the requirements in Rule 32.3 and Rule 32.6(b).  In his petition, Ellis alleged:  "Defendant also shows this Honorable court that this indictment has been modified  (See Exhibit B)."  (C. 16.)  Exhibit B attached to Ellis's petition is a copy of the indictment. However, that copy does not reflect any modifications and Ellis failed to allege in his petition exactly what portion of the indictment was modified or what the modification was.  Therefore, Ellis clearly failed to satisfy the requirements of Rule 32.3 and Rule 32.6(b), and summary denial of this allegation of ineffective assistance of counsel was also proper.

IV.

Ellis contends that his sentence exceeds the maximum authorized by law because, he says, the fact that he had a prior felony conviction was not charged in the indictment nor proven to the jury beyond a reasonable doubt, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny. He also argues that his trial counsel was ineffective for not raising this issue at his sentencing hearing.  These claims are meritless because *Apprendi* does not apply to prior felony convictions used for enhancement under recidivist statutes.  See, e.g., *Barbour v. State*, 903 So. 2d 858 (Ala. Crim. App. 2004). Therefore, summary denial of these claims was proper.

V.

Ellis contends that his appellate counsel was ineffective for not filing a motion for a new trial and then raising on appeal the above allegations of ineffective assistance of trial counsel.  The record from Ellis's direct appeal reflects that Ellis was sentenced on August 8, 2006.  However, the record on appeal was not certified as complete until October 12, 2006, over two months later.[4]  As this Court explained in *Brown v. State*, 903 So. 2d 159 (Ala. Crim. App. 2004):

> "A motion for a new trial must be filed within 30 days of sentencing. See Rule 24.1, Ala.R.Crim.P. 'It is neither reasonable nor practical to expect newly appointed appellate counsel to raise an ineffective-assistance-of-trial-counsel claim without the benefit of a trial transcript to document and support a defendant's allegations as to what occurred during trial.' *V.R.*

> *v. State*, 852 So. 2d 194, 202-03 (Ala. Crim. App. 2002) (opinion on application for rehearing)."

903 So. 2d at 163.  Because the record was not prepared in time for Ellis's appellate counsel to have reviewed it and to have presented any claims of ineffective assistance of trial counsel in a timely filed motion for a new trial, Ellis's appellate counsel was not ineffective for not challenging trial counsel's effectiveness in a motion for a new trial and then on direct appeal.  Therefore, summary denial of this allegation of ineffective assistance of counsel was proper.

> [n.4   The record reflects that trial counsel did file a timely motion for a new trial.  However, trial counsel cannot be expected to allege his own ineffectiveness.  See, e.g., *A.G. v. State*, [Ms. CR-05-2241, November 2, 2007] ___ So. 2d ___ (Ala. Crim. App. 2007).]

VI.

Based on the foregoing, the judgment of the circuit court summarily denying Ellis's Rule 32 petition is affirmed.

*Exhibit H - Doc. No. 14-12* at 3-8 (some footnotes omitted, others contained internally within quoted material).  Ellis filed an application for rehearing with the Alabama Court of Criminal Appeals, which that court denied on September 12, 2008.  *Exhibit J - Doc. No. 26-2.*  On October 1, 2008, the appellate court issued a certificate of judgment.  *Exhibit K - Doc. No. 26-3.*  On October 10, 2008, Ellis filed a petition for a writ of certiorari with the Alabama Supreme Court.  *Exhibit L - Doc. No. 26-4.*  However, on October 20, 2008, the Alabama Supreme Court struck Ellis's petition for a writ of certiorari as untimely filed pursuant to Rule 39(c)(2) of the Alabama Rules of Appellate Procedure.[4]  *Exhibit M - Doc. No. 26-5.*

---

[4]The petition for a writ of certiorari should have been filed "within 14 days (2 weeks) of the decision of the Court of Criminal Appeals on the application for rehearing...."  Ala.R.App.P. 39(c)(2).  Because the Alabama Court of Criminal Appeals denied Ellis's application for rehearing

(continued...)

14

On November 4, 2008, Ellis initiated this 28 U.S.C. § 2254 action by filing a habeas petition asserting the following claims:

1.  Trial counsel rendered ineffective assistance in the following ways:

    a.  Counsel failed to object when the State introduced his prior conviction at sentencing without proving the conviction in compliance with § 12-21-70 of the Code of Alabama and without giving him prior notice.

    b.  Counsel failed to object to the criminal complaint and the warrant on grounds that (i) the complaint failed to set forth the victim's name, (ii) the affidavit consisted solely of the affiant's conclusions, and (iii) the warrant failed to show "that the magistrate had anything upon which to base a probably cause determination."

    c.  Counsel failed to object to the murder indictment on grounds that it failed to allege an essential element of the offense and did not track the language of the statute.

    d.  Counsel failed to "raise an *Apprendi v. New Jersey* motion" arguing that his sentence as a habitual felony offender was illegal because his prior conviction was not found by a jury and established beyond a reasonable doubt.

2.  Appellate counsel rendered ineffective assistance by failing to argue ineffective assistance of trial counsel on direct appeal.

*Petition - Doc. No. 1* at 6-7*; Supporting Memorandum - Doc. No. 2* at 4-11.

---

[4](...continued)
on September 12, 2008, his petition for a writ of certiorari was clearly untimely when he filed it with the Alabama Supreme Court on October 10, 2008.

On March 1, 2010, Ellis amended his habeas petition to add claims that (1) the trial court erred in denying his motion for a judgment of acquittal based on the insufficiency of the State's evidence, and (2) his case "should have been remanded based on the State's offering evidence of other prior violent acts alleged to have been committed by Ellis." *Amendment to Petition - Doc. No. 19* at 1-2.

The respondents argue that all of Ellis's claims for federal habeas relief are procedurally defaulted because Ellis failed to present these claims to the state courts in accordance with the State's procedural rules.  In their original answer, the respondents maintained that Ellis had apparently exhausted all claims presented in his original petition (i.e., his ineffective assistance of counsel claims) and then proceeded to address the merits of Ellis's claims and requested this court to deny Ellis's petition on the merits.  *Doc. No. 14* at 6-13.  However, in a supplemental answer submitted after Ellis filed his amended petition, the respondents assert that, upon further review, it is evident that Ellis did *not* properly exhaust either the claims presented in his amendment *or* those presented in his original petition.  *Doc. No. 26* at 5-6.   Specifically, the respondents assert that Ellis (1) failed to properly exhaust the ineffective assistance of counsel claims presented in his original habeas petition by filing a timely petition for a writ of certiorari in the Alabama Supreme Court after the Alabama Court of Criminal Appeals affirmed the trial court's denial of his Rule 32 petition, and (2) failed to properly exhaust the two claims presented in the amendment to his habeas petition by requesting a rehearing in the Alabama Court of Criminal Appeals after that court affirmed his convictions on direct appeal, and by then petitioning the Alabama

Supreme Court for a writ of certiorari. *Id*. at 5-8. The respondents further assert that because any attempts by Ellis now to exhaust his unexhausted claims in state court would be untimely and therefore futile, Ellis' unexhausted claims – i.e, *all* claims in his original petition and in his amended petition – are procedurally defaulted. *Id*. at 7.

In a reply addressing the question of his procedural default, Ellis contends that the respondents' failure to assert the procedural-default defense in their original answer constituted a waiver of the defense, requiring this court to address the merits of the claims presented in his original petition. *Doc. No. 31-1* at 2. Additionally, Ellis asserts that this court should excuse his procedural default because "the respondents failed to provide the petitioner with court transcripts and records to fully and fairly present his claims, an external factor beyond his control." *Id*. Finally, Ellis suggests that this court should excuse his procedural default because failure to do so will result in a fundamental miscarriage of justice as he is "actually innocent" of the crimes for which he was convicted.[5] *Id*. at 2-3.

Upon consideration of the § 2254 petition as amended, the parties' submissions, the record, and the applicable federal law, the court determines that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the present habeas petition is due to be denied as the claims raised therein by the petitioner are procedurally barred from federal review.

## II. DISCUSSION

---

[5]This court presumes that Ellis means for his arguments regarding "cause and prejudice" and a "fundamental miscarriage of justice" to apply to – and allow review of the merits of – all claims presented in his original petition and his amended petition.

#### A.    *Procedural Default*

As indicated above, after first failing to assert the defense in their original answer as to the claims contained in Ellis's original petition, the respondents filed a supplemental answer in which they argue that all of Ellis's claims for federal habeas relief – those in his original petition and those in his amended petition – are procedurally defaulted because Ellis failed to present these claims to the state courts in accordance with the State's procedural rules. *Doc. No. 26* at 5-8.

Ellis first presented the claims contained in his original federal habeas petition (i.e., his ineffective assistance of counsel claims) to the state trial court in a Rule 32 petition. He appealed the trial court's denial of his Rule 32 petition to the Alabama Court of Criminal Appeals, and the appellate court affirmed the denial of post-conviction relief. Ellis then filed an application for rehearing with the Alabama Court of Criminal Appeals, which that court denied. However, the Alabama Supreme Court struck Ellis's subsequent petition for a writ of certiorari because it was untimely filed pursuant to Ala.R.App.P. 39(c)(2). The record reflects that Ellis first presented the two claims contained in his amended federal habeas petition on direct appeal to the Alabama Court of Criminal Appeals. However, after the appellate court affirmed his convictions on direct appeal, Ellis did not request a rehearing in that court; nor did he subsequently petition the Alabama Supreme Court for a writ of certiorari. Therefore, the record reflects that Ellis failed to exhaust in the state courts all claims contained in his original petition and in his amended petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full

18

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel's* reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule.")

Thus, the respondents are correct in asserting that all of Ellis's claims for federal habeas relief are procedurally defaulted because Ellis failed to present these claims to the state courts in accordance with the State's applicable procedural rules and no state remedy remains by which he may now present such claims (i.e., any attempts by Ellis to exhaust his unexhausted claims in state court would be untimely and therefore futile). "It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure ... constitutes a procedural bar." *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005). *See Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (when a petitioner fails to properly exhaust claims in state court and is barred from raising claims in state court by applicable procedural rules, such claims are procedurally defaulted); *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."); *Snowden v.*

*Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [federal courts must] ... treat those claims now barred by state law as [procedurally defaulted with] no basis for federal habeas relief.").

## B.    Waiver

Ellis maintains that the respondents' failure to assert the procedural-default defense in their original answer constituted a waiver of the defense, requiring this court to address the merits of the claims he presented in his original petition.  *Doc. No. 31-1* at 2.  This court may, in its discretion, accept or reject a procedural-default waiver by the State.  *Thompson v. Wainwright*, 714 F.2d 1495, 1508-09 (11th Cir. 1983).  Here, although the respondents did not interpose the procedural-default defense in their original answer, as they might (and should) have done, and first asserted that defense as to Ellis's original petition in their supplemental answer, the respondents' conduct did not, in the end, evince an intent to waive the procedural-default defense.  In view of the important interests in comity, federalism, and judicial efficiency implicated by a habeas petitioner's procedural default, and considering that the respondents awoke to the additional theory of procedural default in their supplemental answer, this court finds that the procedural-default defense was not waived in this case and that it is therefore applicable to the claims contained in Ellis's original petition as well as to those in his amended petition.

## C.    Cause and Prejudice

This court may reach the merits of a petitioner's procedurally defaulted claim if the

petitioner can show both "cause" for the default and actual "prejudice" resulting from the default.  *See Murray v. Carrier,* 477 U.S. 478, 485 (1986).

> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir. 1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir. 2002).

*Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).  In an apparent attempt to meet this burden, Ellis asserts that this court should excuse his procedural default because "the respondents failed to provide the petitioner with court transcripts and records to fully and fairly present his claims, an external factor beyond his control."  *Doc. No. 31-1* at 2.  However, Ellis does not specify any transcripts and records that were not furnished to him, nor does he elaborate upon the manner in which he needed the transcripts and records to fully and fairly present his claims.  Thus, Ellis wholly fails to demonstrate either cause for his failure to present his federal habeas claims to the state courts in compliance with applicable procedural rules, or the existence of actual prejudice emanating from infringement of federal law.  Accordingly, he is procedurally defaulted on his claims for federal habeas relief.

## D.   *Fundamental Miscarriage of Justice – Actual Innocence*

Ellis also suggests that this court should excuse his procedural default because failure to do so will result in a fundamental miscarriage of justice as he is "actually innocent" of the crimes for which he was convicted.  *Doc. No. 31-1* at 2-3.  A federal court may grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice,

to correct a fundamental miscarriage of justice. *Murray v. Carrier,* 477 U.S. 478, 495-96 (1986). A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *See Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The miscarriage of justice standard is directly linked to actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *Schlup v. Delo*, *supra*. "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable juror would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The standard exacted by *Schlup* "is demanding and permits review only in the '"extraordinary"' case." *House v. Bell*, 547 U.S. 518, 538 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." 547 U.S. at 537. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence.").

*Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare....  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  513 U.S. at 324.

Ellis's claim of actual innocence is wholly conclusory. He merely asserts his innocence without presenting any argument in this regard or pointing to any new, reliable evidence of innocence.  His bare assertion of innocence fails to satisfy the stringent standard set forth in *Schlup*.  Consequently, his procedurally defaulted claims are foreclosed from federal habeas review.[6]

---

[6]It is clear that Ellis establishes neither "cause and prejudice" nor a "fundamental miscarriage of justice" that would entitle him to federal review of the merits of the claims presented in both his original petition and his amended petition. Even if this court were to agree with Ellis's argument that the respondents waived their procedural-default defense, any such waiver would apply only to the claims presented by Ellis in his original petition, as the respondents asserted that the claims in Ellis's amended petition were procedurally defaulted in their first responsive pleading to his amendment. However, if this court were indeed to address the merits of the claims presented by Ellis in his original petition (i.e., his claims of ineffective assistance of counsel), Ellis would not be entitled to federal habeas relief.  The Alabama Court of Criminal Appeals applied *Strickland v. Washington*, 466 U.S. 668 (1994), in determining that the trial court did not err in rejecting the claims of ineffective assistance of counsel that Ellis presented in his Rule 32 petition.  *Strickland* sets forth the clearly established federal law on this issue.  A review of the record reveals that the state court's rejection of Ellis's ineffective assistance of counsel claims was objectively reasonable.  *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).  Likewise, the state court's decision was a reasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2); *Williams*, 529 U.S. at 404-05.  The predicate for each of Ellis's claims of ineffective assistance of counsel is without merit:  (1) Ellis voluntarily admitted his prior conviction when he testified at trial,

(continued...)

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for habeas corpus relief filed by Ellis be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that on or before **February 22, 2011** the parties may file objections to the Recommendation. Objections must specifically identify the findings in the Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain

---

[6](...continued)
eliminating the State's notice and proof requirement under Alabama law; (2) Ellis's indictment cured any alleged defects in his arrest warrant; (3) Ellis's murder indictment substantially tracked the language of Alabama's murder statute and was not defective; (4) *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not apply to prior convictions used for enhancement under recidivist statutes, and so prior convictions need not be charged in the indictment or proven to the jury beyond a reasonable doubt in order to be used for enhancement; and (5) the record on appeal was not prepared in time for Ellis's appellate counsel to have reviewed it and to have properly presented claims of ineffective assistance of trial counsel in a timely motion for a new trial or on direct appeal.  For these reasons, Ellis fails to show that he received ineffective assistance of counsel at trial or on appeal.  Therefore, this court concludes that Ellis is not entitled to federal habeas relief even upon examination of the merits of his claims of ineffective assistance of counsel.

error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981).

DONE, this 7th day of February, 2011.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE